**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHARLES R. PATTERSON,

        Petitioner,

v.                               Case No. 3:23-cv-557-TJC-LLL

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

        Respondent.

---

## ORDER

### I.    Status

Petitioner Charles R. Patterson, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus. Doc. 1. Petitioner challenges a state court (Suwannee County, Florida) judgment of conviction for trafficking in a controlled substance. He is serving a 30-year prison sentence. Respondent filed a Response with exhibits. Doc. 9.[1] Although afforded the opportunity, Petitioner did not file a Reply. Doc. 12. This case is ripe for review.[2]

---

[1] The Court will cite exhibits by document and page number as assigned by the Court's electronic case management system.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must

## II.   Governing Legal Principles

### A. Standard Under § 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016) (explaining AEDPA deference), abrogation in part on other grounds recognized by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. Harrington v. Richter, 562 U.S. 86,

---

consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 584 U.S. 122, 125-26 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes

3

federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (parallel citations omitted).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable,

4

professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

5

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (internal quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. Thus, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105).

## III.   Factual Background and Procedural History

On February 15, 2017, Petitioner agreed to sell two ounces of cocaine to a confidential informant (CI) with the Suwannee County Sheriff's Office. Doc. 9-1 at 35, 186-87. Before the sale took place, officers conducted a "traffic stop" of Petitioner's vehicle. <u>Id.</u> at 187. Petitioner was driving, and his girlfriend sat in the passenger seat. <u>Id.</u> at 35. Officers found 38 grams of cocaine on the girlfriend's person. <u>Id.</u> Petitioner admitted to law enforcement, however, that

6

the cocaine "was his." Id. One week earlier, Petitioner had sold cocaine to the CI. Id. at 28. That transaction was captured "on videotape." Id.

Based on the cocaine recovered on February 15, Petitioner was charged with trafficking in a controlled substance (28 grams or more but less than 200 grams). Id. at 110. That offense "carr[ied] a maximum sentence of 30 years in prison and a minimum mandatory sentence of three years." Williams v. State, 184 So. 3d 623, 625 (Fla. 3d DCA 2016). Shortly after his arrest, Petitioner signed a form stating that the "nature of the charge(s)" and "the maximum penalty therefor" had been "explained to" him. Doc. 9-1 at 30.

On the morning of trial, the prosecutor announced on the record that the State had "made [Petitioner] a plea offer of 90 months in the Department of Corrections, to run concurrent with" a 40-month sentence Petitioner had begun serving for an unrelated charge of possession of a controlled substance. Doc. 9-2 at 9; Doc. 9 at 3 n.3. According to the prosecutor, Petitioner "rejected that and countered with a completely concurrent sentence that would end" when he finished serving his 40-month sentence. Doc. 9-2 at 9. The prosecutor noted that the State had rejected Petitioner's counteroffer and filed a notice of intent to seek habitual-felony-offender (HFO) sentencing. Id. As the prosecutor pointed out, Petitioner faced a maximum sentence of life imprisonment if the court found that he qualified as an HFO. Id.

The court asked Petitioner whether he was "made aware of th[e] plea

7

offers." Id. at 10. He said, "Yes, sir." Id. The court then asked, "[I]s it your position that you reject their offer, and since they didn't accept yours, you're ready for trial?" Id. Petitioner responded, "Yes, sir," and confirmed that he had had "sufficient time" to consider the State's offer. Id. The court reiterated that if he qualified as an HFO, Petitioner faced a maximum of life in prison, "but not mandatory life." Id. at 11.

After a break in the proceedings, defense counsel stated that Petitioner had decided to plead guilty without "any sort of plea agreement." Id. at 11-12. The prosecutor announced that the State no longer sought HFO sentencing. Id. at 40. During the plea colloquy, Petitioner stated that he understood the "maximum penalty" for "trafficking in cocaine" was 30 years' imprisonment. Id. at 13. He also agreed that the offense carried a "minimum mandatory of three years in prison." Id. And he confirmed that he had not "been promised anything at all in order to get [him] to enter [the plea], other than having a lawful sentence imposed." Id. at 15.

The court and the parties reviewed the sentencing scoresheet, which indicated a "lowest permissible prison sentence" of 137.513 months. Id. at 15-16. The court explained to Petitioner that if it accepted his open plea, he faced "up to 30 years in prison, that's the maximum, the minimum would be, we'll call it 12 years in prison, . . . unless I find that there's a reason for departure." Id. at 17. Petitioner said he understood. Id. at 17-18. The court accepted the plea

8

as "freely and voluntarily made." Id. at 22.

Petitioner ultimately received a sentence of 30 years' imprisonment. Id. at 45. The court explained that Petitioner had "13 [prior] drug offenses," including convictions for sale of cocaine and possession of cocaine with intent to distribute. Id. at 44. Indeed, Petitioner had previously served ten years in prison for the latter offense. Id. at 31-32. The court also noted that while he was "out on bond" in this case, Petitioner was arrested for possession of cocaine and resisting an officer without violence. Id. at 32, 43. Based on these facts, the court declined to "giv[e] [Petitioner] any sort of leniency or mitigation." Id. at 43-44.

Shortly after sentencing, Petitioner moved to withdraw his plea. Doc. 9-1 at 143. The court denied the motion. Id. at 200-02. Petitioner appealed, and the First District Court of Appeal affirmed without a written opinion. Doc. 9-5 at 3-4. This federal habeas petition followed. Doc. 1.

## IV.   Analysis

Petitioner raises two grounds of ineffective assistance of trial counsel. Id. at 5-7. Respondent argues that both grounds are procedurally defaulted, but the Court need not reach that issue because they fail on the merits. See Dallas v. Warden, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."); Loggins v. Thomas, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief

9

is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past.").

**A. Ground One**

Petitioner argues that his guilty plea was involuntary because counsel "misled [him] into believing that he had no viable defense." Doc. 1 at 6. According to Petitioner, counsel should have told him that "he could not legally be found guilty where the drugs were found in [his girlfriend's] possession." Id. Petitioner notes that during the sentencing hearing, his girlfriend claimed that "the drugs belonged to her." Id. He also states that at some unspecified time, he "denied any ownership of the drugs." Id. Had counsel explained that the law of possession gave him "a viable defense for trial," Petitioner allegedly would not have pleaded guilty. Id.

This claim fails for lack of prejudice. To show prejudice in the plea context, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The "strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee v. United States, 582 U.S. 357, 368-69 (2017). Thus, "[c]ourts should not upset a plea solely because of post hoc assertions from [the petitioner] about how he would have pleaded but for his attorney's deficiencies." Id. at 369. Instead, the petitioner must "convince the court that a decision to reject [a] plea [] would have been

rational under the circumstances." <u>Diveroli v. United States</u>, 803 F.3d 1258, 1265 (11th Cir. 2015). Where, as here, "the alleged error of counsel is a failure to advise the [petitioner] of a potential . . . defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the . . . defense likely would have succeeded at trial." <u>Hill</u>, 474 U.S. at 59.

Petitioner fails to show that he had a viable defense to the trafficking charge. To support a trafficking conviction, the State must prove that the defendant "actively or constructively possessed" at least 28 grams of cocaine. <u>Greenwade v. State</u>, 124 So. 3d 215, 220 (Fla. 2013). As explained above, Petitioner arranged to sell two ounces of cocaine to a CI. Doc. 9-1 at 35, 186-87. The CI dealt "[e]xclusively" with Petitioner. <u>Id.</u> at 187-88. Indeed, one week earlier, Petitioner had sold the CI cocaine in a transaction that was captured "on videotape." <u>Id.</u> at 28. Before the second sale took place, officers conducted a traffic stop of Petitioner's vehicle. <u>Id.</u> at 187. He was driving, and his girlfriend was in the passenger seat. <u>Id.</u> at 35. Officers located 38 grams of cocaine on the girlfriend's person. <u>Id.</u> Petitioner admitted to law enforcement, however, that the cocaine "was his." <u>Id.</u>

As this summary makes clear, the evidence of Petitioner's guilt was overwhelming. Petitioner nonetheless contends that he "could not legally be guilty" because "the drugs were found in [his girlfriend's] possession." Doc. 1 at 6. But the State need not prove actual possession to secure a trafficking

11

conviction; constructive possession will suffice. Hernandez v. State, 56 So. 3d 752, 758 (Fla. 2010). Constructive possession occurs when the defendant has "knowledge of the contraband" and "the ability to exercise dominion and control over" it. Thompson v. State, 416 So. 3d 436, 438 (Fla. 2d DCA 2025). Petitioner confessed that the cocaine belonged to him—an admission consistent with his prearranged deal to sell two ounces of cocaine to the CI. Doc. 9-1 at 35, 186-87. This evidence was sufficient to prove that Petitioner knew about the cocaine and could exercise "dominion and control" over it. Thompson, 416 So. 3d at 438; see also United States v. Graham, 123 F.4th 1197, 1282 (11th Cir. 2024) (constructive possession established where, among other things, defendant admitted "during his post-arrest interrogation that the drugs were his").

Petitioner notes that, at sentencing, his girlfriend claimed that "the drugs belonged to her." Doc. 1 at 6. But given her "close relationship" to Petitioner—she is the mother of his child—it is unlikely that a jury would find her to be "a credible witness." Slade v. Florida, No. 23-cv-61710, 2024 WL 728081, at *7 (S.D. Fla. Feb. 22, 2024); see also Gensinger v. Sec'y, Dep't of Corr., No. 8:18-cv-2824-KKM-JSS, 2022 WL 685661, at *9 (M.D. Fla. Mar. 8, 2022) (no prejudice from failure to call petitioner's girlfriend as a witness because she "would have . . . suffered impeachment for bias given her romantic relationship with" him). Indeed, the girlfriend testified that she could not "remember" who sold her the cocaine, nor could she recall "who [she was] selling it to." Doc. 9-1 at 184. She

also told the court that "what [Petitioner] did was wrong and he's realizing that." Id. at 183.

Given the weaknesses in the girlfriend's testimony, Petitioner cannot show that a possession defense "likely would have succeeded at trial." Hill, 474 U.S. at 59. With no viable defense to the trafficking charge, there is no "reasonable probability that, but for counsel's [alleged] errors, [Petitioner] . . . would have insisted on going to trial." Id.

**B. Ground Two**

Petitioner contends that counsel's "misadvice" caused him to reject the 90-month plea offer. Doc. 1 at 9. Counsel allegedly told Petitioner that "if he entered an open plea, the sentencing judge would impose a more lenient sentence than" the 90 months "offered by the prosecution." Id. at 10. Moreover, counsel allegedly "failed to advise Petitioner that an open plea would subject him to a 30-year sentence." Id. But for counsel's "misadvice," Petitioner allegedly "would have accepted" the 90-month offer. Id.

This claim lacks merit. "During plea negotiations defendants are entitled to the effective assistance of competent counsel." Lafler v. Cooper, 566 U.S. 156, 162 (2012). When a defendant is represented by counsel during the plea process, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56. Review of counsel's actions is "highly deferential," and "a court must

13

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Additionally, the "representations of the defendant . . . at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

According to Petitioner, counsel promised that if he entered an open plea, the court "would impose a sentence of less than" 90 months. Doc. 1 at 10. But this allegation contradicts Petitioner's sworn statement at the plea hearing. The court asked Petitioner, "Have you been promised anything at all in order to get you to enter [the plea], other than having a lawful sentence imposed?" Doc. 9-2 at 15. Petitioner answered, "No, sir." Id. This sworn statement carries "a strong presumption of verity," Blackledge, 431 U.S. at 74, and Petitioner "bears a heavy burden to show [it was] false," United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). He has not met his burden. Indeed, Petitioner offers nothing beyond his own "conclusory statements" to support his allegation about counsel's promise. Winthrop-Redin v. United States, 767 F.3d 1210, 1217 (11th Cir. 2014).

Petitioner separately alleges that he did not know an open plea "would subject him to a 30-year sentence"—the maximum penalty for trafficking in cocaine. Doc. 1 at 10. But shortly after his arrest, Petitioner signed a form

14

indicating that the "nature of the charge(s)" and "the maximum penalty therefor" had been "explained to" him. Doc. 9-1 at 30. Moreover, during the plea colloquy, Petitioner stated that he understood the "maximum penalty" for "trafficking in cocaine" was 30 years' imprisonment. Doc. 9-2 at 13. If Petitioner "had been told something different by his lawyer, [he] was obligated to speak up at the plea conference and ask the court about the discrepancy." Jones v. State, 680 So. 2d 585, 587 (Fla. 4th DCA 1996). "He could not stand mute, accept the benefits of the plea, and then collaterally attack its voluntariness on the basis of something that should have been cleared up at the time of the plea." Id.; see also Malone v. State, 312 So. 3d 199, 200 (Fla. 1st DCA 2021) ("[B]ecause the trial court explained that Appellant had the possibility of youthful offender sentencing, Appellant should have spoken up to seek clarification regarding any confusion he may have had."); Jean-Gilles v. Sec'y, Dep't of Corr., No. 8:22-cv-674-CEH-TGW, 2024 WL 4607039, at *9 (M.D. Fla. Oct. 29, 2024) ("If Petitioner believed that he would receive a 30-month sentence, it was incumbent upon him to speak up during the plea colloquy and his failure to do so at that time would have estopped him from later arguing a position contrary to statements made in open court or in writing.").

For these reasons, Petitioner fails to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

15

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[3]

3.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of June, 2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

---

[3] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

16

TpaP-2
c:
Charles R. Patterson, #G11594
Counsel of Record